IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DANIEL ZACHARY ENICKS,

    Plaintiff,

v.                                      CASE NO. 2:06-cv-01053

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

    Defendant.

## M E M O R A N D U M   O P I N I O N

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the court on cross-motions for judgment on the pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

    Plaintiff, Daniel Zachary Enicks (hereinafter referred to as "Claimant"), protectively filed an application for SSI on June 21, 2004, alleging disability as of July 1, 1998, due to childhood leukemia, osteoporosis, panic attacks, anxiety, and blood clots. (Tr. at 64-68, 78.) The claim was denied initially and upon

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

reconsideration. (Tr. at 34-36, 41-43.) On September 27, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 44.) The hearing was held on February 21, 2006, before the Honorable James P. Toschi. (Tr. at 310-40.) By decision dated May 16, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-19.) The ALJ's decision became the final decision of the Commissioner on November 3, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On December 18, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently

2

engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

3

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of "osteoporosis and history of [l]eukemia, in remission." (Tr. at 13.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. Id. Claimant has no past relevant work. (Tr. at 18.) The ALJ concluded that Claimant could perform jobs such as fast food worker, counter attendant, and cashier which exist in significant numbers in the national economy. (Tr. at 18-19.) On this basis, benefits were denied. (Tr. at 19.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

4

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was nineteen years old at the time of the administrative hearing. (Tr. at 313.) He is a high school graduate and has taken courses at West Virginia University Institute of Technology ("West Virginia Tech"). (Tr. at 303, 314, 318.) Claimant had never been employed. (Tr. at 78, 177, 217.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On July 28, 1998, Claimant was admitted to Charleston Area Medical Center ("CAMC"), diagnosed with acute lymphocytic leukemia, and treated under a Pediatric Oncology Group protocol, which included high dose steroids. (Tr. at 255, 267, 269-70.)

On September 2, 1998, Claimant was discharged from CAMC after

5

testing showed remission of his leukemia. (Tr. at 269, 271-72.)

On September 15, 2000, x-rays showed "osteoporosis in the region of the left hip and lumbar spine." (Tr. at 257).

From December 15, 2000, to June 29, 2004, Claimant received treatment for osteopenia and hypogonadism[2] from Evan Jones, M.D., Ph.D., a pediatric endocrinologist in the Pediatric Endocrine Clinic at University Health Associates in Morgantown, West Virginia. (Tr. at 155-71, 288-89.) On December 15, 2000, Dr. Jones started Claimant on Fosamax 10 mg per day and testosterone injections monthly. (Tr. at 288-89.)

On June 29, 2004, Dr. Jones saw Claimant for follow-up evaluation and noted "a significant improvement in bone density" and "normal pubertal development." (Tr. at 155-56.) Dr. Jones removed the testosterone dose and Fosamax from the treatment plan and prescribed 400 IU Vitamin D and two extra strength TUMS daily. (Tr. at 155.)

On November 14, 2004, Lisa C. Tate, M.A., a licensed psychologist, evaluated Claimant at the request of the State disability determination service ("DDS"). (Tr. at 175-81.) Ms. Tate observed that Claimant had good grooming and personal hygiene, a normal gait, normal posture, and good use of all limbs. (Tr. at

---

[2] Hypogonadism is functional incompetence of the gonads especially in the male with subnormal or impaired production of hormones and germ cells. Http://medical.merriam-webster.com/medical/hypogonadism.

175.) She noted that Claimant had received "excellent" grades in school and was in his first semester at West Virginia Tech, carrying 13 hours and making A's and B's. (Tr. at 176-78.) During the mental status examination, Ms. Tate noted that Claimant had a euthymic mood, broad affect, logical and coherent thought processes, fair insight, normal judgment, normal immediate and remote memory, moderately deficient recent memory, normal social functioning, and normal concentration, persistence, and pace. (Tr. at 177-78, 180.) Ms. Tate diagnosed panic disorder without agoraphobia based on Claimant's report of panic attacks three to four times a month and a mathematics disorder based on the discrepancy between his level of intellectual functioning and his Arithmetic score on the WRAT-3. (Tr. at 179.) Claimant reported his daily activities to include showering, going to school, doing homework, hunting, fishing, and watching television. (Tr. at 179.) He reported his weekly activities to include playing sports with friends, eating out, playing video games, attending church, grocery shopping, cleaning his bedroom, and taking out the trash. (Tr. at 179.) He reported spending three hours every two weeks mowing the grass with a push mower and using a weed eater. (Tr. at 179.)

On November 27, 2004, Nilima Bhirud, M.D., an internist, conducted a physical examination at the request of DDS. (Tr. at 182-88.) Dr. Bhirud noted that Claimant could pick up a coin from the floor, stand on either foot, heel walk, toe walk, and squat.

(Tr. at 183.) She observed that his gait was normal, and he was comfortable in the sitting and supine positions. (Tr. at 183.) Dr. Bhirud noted that Claimant had no tenderness of the cervical, thoracic or lumbar spine, negative straight leg raising on both sides, normal joints, normal cranial nerves, and no sensory or motor deficit. (Tr. at 184.)

On December 7, 2004, Marcel G. Lambrechts, M.D. completed a Physical Residual Functional Capacity Assessment form at the request of DDS. (Tr. at 189-97.) Dr. Lambrechts opined that Claimant could perform medium work with no more than occasional climbing and balancing and a need to avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards. (Tr. at 190-91, 193-94.)

On January 3, 2005, Rosemary L. Smith, Psy. D., a licensed psychologist, completed a Psychiatric Review Technique form at the request of DDS. (Tr. 198-212). Ms. Smith opined that Claimant's mental impairments were not "severe" as they caused only mild functional limitations and no episodes of decompensation. (Tr. at 198, 208.)

On March 16, 2005, Lawrence B. Kelly, M.D., a psychiatrist, evaluated Claimant. (Tr. at 215-17.) Dr. Kelly noted that Claimant had a 3.0 grade point average as a college freshman and wanted to be a coach. (Tr. at 217.) During the mental status examination, Dr. Kelly noted that Claimant had good rapport, a

euthymic mood, broad affect, clear and coherent speech, normal thought content, and good judgment. (Tr. at 217.) Dr. Kelly diagnosed probable bipolar disorder not otherwise specified, most recent episode depressed, and rated Claimant's global assessment of functioning ("GAF") to be 60.[3] (Tr. at 217.)

On July 18, 2005, Rafael A. Gomez, M.D. completed a Physical Residual Functional Capacity Assessment form at the request of DDS. (Tr. at 219-27.) He opined that Claimant was capable of performing medium work no more than occasional climbing of a ladder, rope, or scaffolds and a need to avoid concentrated exposure to hazards. (Tr. at 220-21, 223.)

On July 29, 2005 Jeffrey L. Harlow, Ph.D., a licensed psychologist, completed a Psychiatric Review Technique form at the request of DDS. (Tr. at 228-42.) Dr. Harlow concluded that Claimant's mental impairments were not "severe" as they caused only mild limitations in activities of daily living and maintaining persistence, concentration, and pace, no difficulties in maintaining social functioning, and no episodes of decompensation. (Tr. at 228, 238.)

On December 27, 2005, Dr. Kelly completed a Mental Assessment of Ability to do Work-Related Activities form at the

---

[3] A GAF score is a rating of overall psychological functioning on a scale of 0 to 100. A GAF score of 51-60 corresponds to "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

request of Claimant's attorney. (Tr. at 273-75.) Dr. Kelly opined that Claimant had serious limitations in dealing with work stresses, understanding complex or detailed job instructions, and behaving in an emotionally stable manner, and major limitations in maintaining attention and concentration. (Tr. at 273-75.)

On December 29, 2005, Mark Duff[4], D.O. completed a Medical Assessment of Ability to do Work-Related Activities (Physical) form at the request of Claimant's attorney. (Tr. at 290-92.) Dr. Duff opined that Claimant had no limitations in lifting, carrying, sitting, manipulative functions, or visual and communicative functions; could stand and/or walk for five to six hours in an eight-hour day; could balance frequently; could occasionally climb, stoop, crouch, kneel, and crawl; and had environmental restrictions relative to temperature extremes, chemicals, and vibrations. (Tr. at 290-91.)

On January 20, 2006, Dr. Duff completed a Mental Assessment of Ability to do Work-Related Activities form at the request of Claimant's attorney. (Tr. at 279-81.) He opined that Claimant had marked and extreme limitations in making occupational and performance adjustments and marked limitations

---

[4] Dr. Duff's relationship to Claimant is apparently closer than that of a typical physican to patient. Dr. Duff stated that he has "spent extended periods of time with Daniel [Claimant] since childhood," and alluded to watching him climb hills while the two men hunted together. (Tr. at 281, 290, 292.)

in making personal social adjustments. (Tr. at 280-81.)

In a letter to Claimant's attorney dated February 22, 2006, Kitty Palausky, M.A., an educational counselor at West Virginia Tech, wrote that Claimant was eligible for and had received tutoring and counseling services at the college. (Tr. at 303.) She explained that he needed the accommodations of sitting near the front of the class, being permitting to record lectures, being tested with extended time limits and no distractions, and extra time to walk between classes. Id.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's credibility finding was improper; and (2) the ALJ improperly rejected the mental assessments of Drs. Kelly and Duff, Claimant's treating physicians. (Pl.'s Br. at 5-11.)

The Commissioner counters that substantial evidence supports the ALJ's decision on the grounds that (1) the ALJ reasonably found that Claimant was not entirely credible; and (2) the ALJ properly weighed the mental assessments of Drs. Kelly and Duff. (Def.'s Br. at 9-17.)

Discussion

Credibility Determination

With respect to Claimant's argument that the ALJ wrongfully discredited Claimant's subjective complaints of pain, the court

finds that the ALJ properly weighed Claimant's subjective complaints of pain in keeping with the applicable regulations, case law, and social security ruling ("SSR") and that his findings are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

In his decision, the ALJ determined that Claimant had medically determinable impairments that could cause his alleged symptoms. (Tr. at 16.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects, and treatment other than medication. (Tr. at 16-17.) The ALJ explained his reasons for finding Claimant not entirely credible, including the objective findings, the lack of evidence of side effects which would interfere with the jobs identified by the vocational expert, and "[t]he claimant's activities of daily living . . . , specifically the claimant's ability to attend 15 hours of classes at West Virginia Tech." Id.

Evaluating Opinions of Treating Physicians

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to

12

provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability,

13

(4) consistency, (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

Here, Claimant argues that the ALJ improperly rejected the mental assessments of two treating physicians, Drs. Kelly and Duff. (Pl.'s Br. at 8-10.) The ALJ rejected Dr. Kelly's opinion about Claimant's mental capabilities because it was "not consistent [with] the claimant's activities of daily living or with the medical evidence of record." (Tr. at 14.) This reasoning is sound. Dr. Kelly's opinion that Claimant had serious limitations in dealing with work stresses, understanding complex or detailed job instructions, and behaving in an emotionally stable manner, and major limitations in maintaining attention and concentration was indeed incongruous with Claimant's broad range of self-reported activities of daily living, including taking college courses, playing sports with friends, hunting, and attending church. (Tr. at 273-75.) In addition, the court observes that Dr. Kelly's mental assessment is inconsistent with the clinical findings of Ms. Tate that Claimant exhibited normal social functioning and normal concentration, persistence, and pace. (Tr. at 180.) Furthermore, Dr. Kelly's assessment of serious and major mental limitations

14

is incompatible with his own findings that Claimant had good rapport, a euthymic mood, broad affect, clear and coherent speech, normal thought content, good judgment, and a GAF of 60, indicating only moderate difficulty in functioning. (Tr. at 217; See note 3, *supra*.)

The ALJ stated the following rationale for rejecting Dr. Duff's mental assessment:

> The undersigned rejects this assessment as it is not consistent with the medical evidence of record. Additionally, the assessment is not consistent with the claimant's activities of daily living and social functioning. The claimant attends West Virginia Tech, taking 15 credits, four hours a day. Also, Dr. Duff is neither a psychologist nor a psychiatrist and not qualified to make a determination on the claimant's psychological limitations.

*Id.* The court finds that these are "good reasons" for rejecting Dr. Duffs' opinion as to Claimant mental capabilities, considering the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6), particularly specialization.

For the above reasons, the court concludes that the ALJ's determination to reject the mental assessments of Drs. Kelly and Duff complied with the controlling case law and regulations and was supported by substantial evidence of record.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Claimant's Motion for Judgment on the Pleadings is

15

DENIED, Defendant's Motion for Judgment on the Pleadings is GRANTED, the final decision of the Commissioner is AFFIRMED, and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 26, 2008

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge